[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION BACKGROUND
BACKGROUND
In this marital dissolution action, the court heard testimony on December 15, 1997 and December 22, 1997 following which the court made findings concerning the parties' marriage, and entered judgment dissolving the marriage on the basis of its irretrievable breakdown. At the request of the parties, the court bifurcated the issues of parenting, support, alimony, and property disposition and reserved judgment on those topics. This memorandum addresses the reserved issues.
At issue between the parties is the nature of the custody order, the level of child support, whether to order the defendant to pay alimony to the plaintiff, and, if so, the amount and duration of such an order, the division of the parties' personal property, and the plaintiff's request for counsel fees. In framing its orders, the court has taken into consideration the oral testimony of the parties, the exhibits introduced as evidence, and the pertinent statutory criteria set forth in Chapter 815j of the Connecticut General Statutes. CT Page 428
PARENTING
The parties have one child, Jason, born on September 2, 1990. The plaintiff seeks sole custody of Jason; the defendant seeks an order of joint custody. Additionally, if there is an order of joint custody, the plaintiff seeks the designation as primary residential parent. The issue is properly framed in the pleadings. The issue of custody was referred to the Family Division on January 9, 1997 and assigned to Family Relations Counselor Margaret Romanik. Ms. Romanik, who testified at trial, brings considerable experience and skill to her task. She has been employed as a Family Relations Counselor for approximately ten years, has a Masters of Social Work degree from Fordham University, and has been involved in numerous custody studies during the course of her professional employment. Ms. Romanik completed her investigation and report on this matter on September 30, 1997. During the course of her investigation, she met with both parties, had the opportunity to observe Jason at home with each of his parents, and received medical, school, and police records pertinent to family members. She also spoke with third parties who had information relevant to the parenting skills and behaviors of each parent. On the basis of her investigation, Ms. Romanik has recommended that the court award joint custody of Jason to his parents, with no designation of primary residence, and she has proposed a detailed schedule setting forth the days on which Jason would reside with each of his parents. Her specific reason for proposing that neither parent's residence be designated as primary is her concern that such a designation might encourage the parent with primary care to make unilateral parenting decisions. While acknowledging that each parent has made unilateral decisions about Jason during the period of separation, Ms. Romanik expressed the belief that it is in Jason's interest that his parents share his custody, and consult with one another prior to making non-routine decisions regarding Jason. She expressed the belief that the parties periodic failure to work together over the past two years was due, not to their inability, but to their apparent unwillingness to communicate appropriately with one another on matters concerning Jason. It is Ms. Romanik's belief that the parents, if they are committed to it, can learn to parent cooperatively, and that this goal can best be met by the creation of a clearly-delineated parenting schedule without the unnecessary designation of one parent's home as Jason's primary residence. Ms. Romanik testified to her belief that such a designation would become a badge of power for the primary custodian resulting in less cooperation between parents in regard to Jason's needs. Based on the evidence adduced at trial, the court agrees. The court is impressed with the thoroughness of Ms. Romanik's investigation, and with the insights contained in her evaluation and CT Page 429 recommendations.
The parties separated in November, 1995 when Mrs. Weiss moved from the former family residence in South Glastonbury with Jason. During their separation, under a pendente lite joint custody order, the parties have shared Jason's time under a parenting plan which has given each parent substantial residential time with Jason. At present, Mrs. Weiss resides in a condominium in Glastonbury and Mr. Weiss resides in a rental facility in East Hartford. Jason attends the Hebron Avenue School in Glastonbury where he is in the First grade. From the testimony of both parties and Ms. Romanik, it is apparent that Jason is a well-adjusted, bright, sensitive, and happy youngster, closely connected in bonds of love to each of his parents. The court finds that Ms. Romanik's recommendations are consistent with Jason's best interest. Accordingly, joint custody of Jason is awarded to the parties. They shall cooperate and consult with each other in regard to issues relating to Jason, to include decisions regarding his schooling, health care, religious training, and general upbringing. The parent with whom Jason is residing at the time he needs emergency health care shall be entitled to obtain such care for Jason with the proviso that the other parent shall be notified of such an event as soon as practicable. In the event the parties are unable to mutually agree on any issue concerning Jason's welfare, they shall seek the services of a mediator to assist them to make a decision by consensus. Neither party shall unreasonably refuse to negotiate with the other; nor shall either party unreasonably refuse to agree to the suggestions of the other. Unreasonable rigidity or an unwillingness to cooperate in this shared custody parenting shall be evidence tending to establish that the party unwilling to cooperate may not be an apt joint custodian.
In the event either party wishes to move a distance greater than fifty miles from the other, that party shall give the other ninety days written notice of such intention so that the parties may have sufficient time to negotiate, and, if necessary, to litigate questions of parenting which may arise on account of the planned relocation.
The court adopts the parenting schedule recommended by Ms. Romanik. The contents of her report beginning with the first full paragraph on page 5 of the report and including numbered paragraphs one through eight are hereby made the orders of the court. Those orders shall be set forth verbatim in the judgment to be prepared by counsel for the plaintiff. In fashioning it's custody orders, the court has taken into consideration the provisions of C.G.S. 46b-56, and 46b-56a.
CHILD SUPPORT
CT Page 430
Mrs. Weiss is forty-two years old, and has a Masters Degree in Social Work from the University of Connecticut. She works as a psychiatric social worker at the Manchester Memorial Hospital where she is employed part-time for twenty hours a week, earning an hourly wage of twenty dollars, sixty seven cents ($20.67). She has health insurance through this employment, and has Jason covered under her dental insurance. In addition, Mrs. Weiss has a private practice from which she grosses approximately two hundred, seventy-five ($275.00) dollars a week. From this amount, she must pay a portion, approximately ninety-five ($95) dollars, for the space she occupies.[1]
Mr. Weiss, who is forty-three years old, has a Bachelor's Degree, and presently works for Data Transmission Network, Inc., as a sales representative earning a weekly gross taxable income of approximately six hundred eighty-six ($686) dollars, taking into consideration his business expenses of one hundred ninety-two ($192) dollars a week. As a consequence, his net weekly income is four hundred thirty three ($433) dollars. The defendant has had a series of employments in the last few years subsequent to the failure of his distribution business. In the calendar years 1993 and 1994, his annual gross earnings were in the range of one hundred fifty to one hundred seventy-five thousand ($150,000-175,000) dollars when he was in the book publishers' distribution business. This activity failed, however, because his suppliers determined another route for distribution, essentially cutting him out and eliminating this profitable niche. While the defendant's business was failing, he borrowed funds in a futile effort to keep it afloat, resulting in substantial indebtedness. As a consequence, both parties filed Chapter 7 bankruptcies through which they gained relief from indebtedness but also lost their home and other real estate holdings. The defendant's present earnings, while based, in part, on projections and not realized income, are a fair reflection of his present earning ability. Application of the Child Support Guidelines to the parties' earnings results in an obligation for the defendant to pay the plaintiff the sum of ninety-six dollars a week as child support. While the defendant seeks a deviation from application of the Guidelines on account of the parties' shared custodial arrangement, the court declines under all the circumstances of the totality of its financial orders to deviate from the Guidelines. Accordingly, the defendant is ordered to pay to the plaintiff, as weekly child support, the sum of ninety six ($96) dollars, to be paid by contingent wage withholding, with payments to be made in intervals no greater that seven days apart. In making this order, the court has taken into consideration the provisions of C.G.S. 46b-84 and 46b-215, and the Child Support Guidelines. CT Page 431
In addition, the defendant shall maintain health insurance as available to him through his employment for the benefit of Jason, and the plaintiff shall maintain dental insurance as available to her through her employment for Jason's benefit. The parties shall split equally all of Jason's health care expenses not covered by insurance as well as the co-pay portions. The provisions of C.G.S. 46b 84 (d) shall apply so that the signature of either parent shall constitute a valid authorization to the health care insurer for purposes of processing an insurance reimbursement payment to the provider of health care services.
DEPENDENCY EXEMPTION
The parties shall alternate the entitlement to claim Jason as a dependency exemption for tax purposes. The plaintiff shall be entitled to claim Jason for 1997 and succeeding odd numbered years.
ALIMONY
The plaintiff has adduced no credible evidence in support of her alimony claim. The court finds that by application of the criteria set forth in C.G.S. 46b-82, neither party is entitled to alimony from the other. Both are well educated and successfully employed in ascendant careers. The parties' earnings are not substantially disparate. While the plaintiff has correctly noted that the defendant enjoyed a brief period of higher earnings in the publishers' distribution business, his history of earnings as adduced at the hearings does not support a conclusion that he is presently earning less than his capacity. While the court understands the plaintiff's upset that the defendant's business failings caused both parties the loss of assets, this factor does not trigger an entitlement to compensatory alimony. No alimony is awarded to either party.
PROPERTY DISTRIBUTION
Attendant to their separation, the parties divided their personal property. At trial, the plaintiff presented a list of personal property in the possession of the defendant which she wishes to have divided. During testimony, the defendant agreed that the plaintiff may have two of the four lithographs listed as items one and two on Plaintiff's Exhibit 1 and one of the stereo systems listed as item seven so long as the plaintiff returns his mother's paintings in her possession to him. Aside from these concessions, it would be unfair to simply divide the items on Plaintiff's Exhibit 1 since the proffered list only includes those items in the defendant's possession, and none of the articles possessed by the plaintiff. Accordingly, with respect to personal property, each party CT Page 432 shall own the property each possesses, free of any claims from the other, except that the plaintiff shall return to the defendant the defendant's mother's paintings in her possession, and the plaintiff may select and own two of the four lithographs identified as Tarkay and Maimon paintings on Plaintiff's Exhibit 1. Additionally, she shall be entitled to ownership of her choice of one of the two stereo systems listed as item seven. The plaintiff shall have reasonable access to inspect these items and to remove them. The exchange of property shall be accomplished within thirty days of the date of this Memorandum.
With respect to liabilities, each party shall be solely responsible for payment of the liabilities shown on his and her financial affidavits and shall hold the other harmless therefrom, except that the defendant shall hold the plaintiff harmless from any indebtedness claimed by any taxing authority on account of the defendant's business activities at any time during the course of the marriage. This provision shall pertain to any taxes, penalties, or interest, which may be due. With respect to the division of assets and liabilities, the court has taken into consideration the criteria set forth in C.G.S. 46b-81.
LIFE INSURANCE
To the extent that life insurance in provided to either party through his or her employment without cost to the party, the court orders each party to designate Jason as the beneficiary of such insurance in the full amount of the death benefit, and to maintain that insurance in full force and effect during Jason's minority.
COUNSEL FEES
The court makes no order of counsel fees to either party. Neither has substantially greater earnings, assets, or liquidity than the other. cf. C.G.S. 46b-62
BIRTH NAME
At the plaintiff's election, she shall be entitled to the restoration of her birth name, Robin Savitsky. In such event, counsel for the plaintiff shall include such an order as part of the judgment file.
Judgment may enter accordingly.
Bishop, J.